# OCTOBER, 1929.

STATE OF MISSOURI EX REL. S. F. CANTLEY ETC., RESPONDENT, V. SARAH E. AKIN, APPELLANT.*

Kansas City Court of Appeals. November 11, 1929.

*Corpus Juris-Cyc. References: Chattel Mortgages, 11CJ, section 339, p. 625, n. 44; section 347, p. 633, n. 20; p. 634, n. 21; Courts, 15CJ, section 427, p. 1014, n. 93; section 581, p. 1131, n. 31; Equity, 21CJ, section 93, p. 116, n. 5; section 96, p. 119, n. 50; Executors and Administrators, 24CJ, section 2815, p. 1184, n. 57; Judgments, 33CJ, section 149, p. 1211, n. 49.

*John C. Landis, Jr.* and *German, Hull & German* for respondent.

*Sterling P. Reynolds* for appellant.

BLAND, J.—This is a suit in equity having for its purpose the fix ing of a lien upon certain money in the hands of the defendant as administratrix of the estate of Frank J, Akin, deceased. The Chancellor decreed that plaintiffff was entitled to a lien in the sum of $1652.98, witffh interest, declared this amount to be a lien upon the deposit of the defendant in the Bank of Faucett "and that execution issue therefor." Defendant has appealed.

For some time prior to October 1, 1923, the Bank of Dearborn was a banking corporation operating at Dearborn, Missouri, but on said day said corporation was taken over by the State Finance Commissioner. Consequently this suit is brought by the State of Missouri at the relation of S. F. Cantley, Commissioner of Finance in charge of said bank, against the defendant.

The facts show that on June 20, 1922, Frank J. Akin, who was a farmer living in Buchanan County, executed his note to the Bank of Dearborn for $3,000, due fifteen days after date, and in this connection on said day gave a chattel mortgage on some of his farm property to secure same. This note and mortgage was taken as collateral security for another note for the same amount given by Frank J. Akin to the bank in December, 1921. However, the total

indebtedness of Akin to the bank was but $3,000. A copy of the mortgage was filed with the recorder of deeds upon the day after it was given. Frank J. Akin died on January 7, 1923, and on January 11, 1923, letters of administration were issued to the defendant, his wife, jointly with one W. B. Akin.

On March 15, 1923, the administratrix conducted a sale of the personal property of deceased pursuant to an order of the probate court. This sale took place upon the farm of the deceased where all the personal property then belonging to the estate was sold at public auction. However, prior to the sale W. B. Akin, one of the administrators, had an agreement with the vice-president and managing officer of the bank that the sale might include the property covered by the chattel mortgage in question. This was to permit the selling of all the personal property, which it was thought could be sold to a better advantage that way than by selling the unmortgaged property separately. However, the bank agreed to the sale of the mortgaged property under the understanding and agreement, made orally, that the proceeds of the sale of the mortgaged property should be paid to the bank. Immediately after the sale the net amount realized from all the property sold, to-wit, the sum of $3,113.92 was deposited in the Bank of Faucett to the credit of the administrators, $2100 of which the court found now to be in that bank and all of which defendant admits she now has.

On August 18, 1923, W. B. Akin resigned as co-administrator of the estate and since that time defendant has been and is the sole representative of the estate.

The evidence shows that of the amount deposited in the Bank of Faucett, $1652.98, was the proceeds from the sale of the property covered by the chattel mortgage. However, no part of this sum has ever been paid to the Bank of Dearborn or to the Commissioner of Finance.

There was evidence further tending to show that the estate is insolvent and the debt of the Bank of Dearborn remains unpaid.

Defendant complains that the agreement with the Bank of Dearborn that the mortgaged property might be sold together with the other property upon deceased's farm, constituted a waiver of the lien of the bank, and therefore, this suit cannot be maintained. There is no merit in this contention. [11 C. J. 625; Love v. Scott, 179 Mo. App. 331, 356, 357; In re Estate of Meeker, 45 Mo. App. 186, 196.] Of course, as to the purchaser of the mortgaged property there was such a waiver, and that is all that is held by the authorities cited by defendant, but as between the parties to the agreement there was not such a waiver. In the absence of performance by the administrators of the agreement in question equity will transfer the lien to the proceeds of the sale of the mortgaged property and declare the administrators trustees for plaintiff for

the amount in their hands that the mortgaged property brought. [Love v. Scott, supra.] If this were a contest between the purchasers of the mortgaged property at the sale and plaintiff, then the cases of Adamson v. Fogelstrom, 300 S. W. 841, and like cases cited by the defendant would be in point, but this is a suit between the original parties to the agreement or their representatives. The agreement was made in contemplation of payment of the mortgage and the agreement not being performed equity will create a lien against the proceeds of the sale to take the place of the lien of the mortgage upon the original property.

It is claimed that the court was without jurisdiction to render a judgment declaring a lien on the money of the estate in the hands of the Bank of Faucett, because that Bank was not a party to the suit. There is no merit in this contention. The money is subject to the control of the defendant as administratrix, consequently it is in her hands as it is subject to her check and is a part of the estate. No rights are asserted against the Bank of Faucett nor does the decree provide any rights against that Bank in favor of plaintiff. Under the circumstances we do not think that the Bank of Faucett was necessarily a party. The case of State ex rel. McElvain v. Riley, 276 S. W. 881, and like cases cited by defendant are clearly not in point. Aside from this there was no pleading on the part of the defendant of non-joinder of a party defendant. [Barnard v. Keathley, 230 Mo. 209.]

It is claimed that the law requires a chattel mortgage to be in writing, signed, acknowledged and recorded and that the oral modification of the chattel mortgage in question cannot be enforced as plaintiffs are attempting to do in this case.

There was no objection to the testimony of the oral agreement upon the grounds now urged against it, but even if there had been there would be no merit in the contention. This is not a suit upon the mortgage but upon a cause of action created by equity growing out of the violation of the agreement for the sale of the mortgaged property. Equity will follow, if possible, the proceeds of such a sale and fix a lien upon them in lieu of the lien of the mortgage upon the property sold or, as some of the authorities put it, equity will transfer the lien of the mortgage to the proceeds of the sale.

It is next contended that plaintiffs' cause of action is barred by limitations. In this connection defendant relies upon Section 2259, Revised. Statutes 1919, which provides that after the expiration of five years after the original or copy of the mortgage shall have been filed with the recorder, the mortgage shall cease to be valid against the mortgagor, etc., and that the recorder is authorized to destroy all such mortgages on file after the expiration of such a period. The evidence shows that the mortgage in controversy was recorded on June 21, 1922; that this suit was brought on December

22, 1927, and the mortgage was destroyed by the recorder on September 1, 1927.

If this were a suit depending upon the validity of the mortgage as of the date of the trial there might be some merit in this contention. However, the parties to it, the deceased by his administrator, had in 1923, entered into an agreement for the discharge of the mortgage which at that time was perfectly good. Under this agreement the property mortgaged was sold to one who obtained a perfect title to it. The administrator failed to comply with his agreement and the lien of the mortgage could not be enforced against the specific property the mortgage covered. The purpose of the statute in question is to force a foreclosure of an unpaid mortgage, as to the property covered by it, within five years after the mortgage is filed with the recorder. How could there have been a foreclosure of the mortgage in question after the property covered by it had been sold? It was perfectly lawful for the bank to enter into the agreement with the administrator looking toward a discharge of the mortgage. The administrator then proceeded under said agreement to destroy the lien of the mortgage so that it could not be enforced upon the specific property covered and then refused to comply with his part of the agreement. The estate now claims that the bank, when it attempts to enforce the agreement as near as it can be enforced, is barred because of the act of the administrator making it impossible for the bank to meet the requirements of the statute. We are firmly of the opinion that the estate cannot maintain its position and the point is ruled against the defendant. [37 C. J., pp. 725, 726.]

It is claimed that the probate court has exclusive jurisdiction in all matters pertaining to the property of deceased persons and that that court:

"Has exclusive original jurisdiction in the matter of liens on property under its control, and under all the authorities it has the right and it is its duty to apply equitable principles in the distribution of the same."

There is no merit in this contention. While the probate court may apply equitable principles in matters coming within its jurisdiction, it is well settled that the probate court has no original equity jurisdiction and cannot try issues which are purely equitable in their nature and where the relief demanded is equitable. [State Bank v. Lillibridge, 293 S. W. 116.]

It is well established that courts of equity have jurisdiction to declare trusts and establish equitable liens of the kind and character in controversy in this suit. [Greil Bros. Co. v. City of Montgomery, 182 Ala. 291, 299, and cases therein cited.]

The statutes in reference to proving demands against estates contemplate judgments in favor of creditors only, and creditors can

fasten their debts only on those funds which are applicable to the payment of debts. [Stokes v. Burlington Co. Trust Co. (N. J.), 108 Atl. 863; Vandever's v. Freeman, 20 Tex. 334.] This is not such a proceeding but is a suit to follow the money belonging to the Bank of Dearborn, commingled with that belonging to the estate, which is insolvent, and to remove the bank's money bodily from the assets of the estate and transfer it to the bank or its representative who has title to the same. The very nature of the proceeding denies the relationship of debtor and creditor (Bank v. Millsbaugh, 275 S. W. 597), and involves purely equitable issues and equitable relief. It is true that the probate court has been given authority by statute to discharge a chattel mortgage. [See Barr v. Thomas, 127 Mo. App. 1.] But this is on the theory that the mortgagor is entitled to sell property which it might be to the interest of the estate to redeem, but here the mortgaged property is gone.

We need not say whether the probate court could grant any kind of adequate relief in plaintiffs' predicament. However, we have not been cited to any authorities holding that the probate court has such authority and we are not cognizant of any case where such has been attempted. We believe that plaintiffs should not be put to such a doubtful remedy especially in view of the ancient established right in courts of equity to assume jurisdiction to establish and enforce equitable liens. We therefore hold that plaintiff was not required to resort to the probate court. [Barnard v. Keathley, supra; 24 C. J. 747.] Even were this a suit at law the circuit court would have concurrent jurisdiction with the probate court. [Sec. 188, R. S. 1919; Richardson v. Palmer, 24 Mo. App. 480; Bank v. Clifton, 263 Mo. 201, 216.] The cases of Scott v. Rayston, 223 Mo. 568, and Brewing Co. v. Steckman, 180 Mo. App. 320, cited by defendant involve matters covered by statutes relating to proceedings peculiar to the probate court.

It is claimed that the administrator could not make the agreement with the bank with reference to the sale of the mortgaged property without an order from the probate court. There is no merit in this contention. This agreement could not involve the estate in any detrimental way. The probate court made an order for the sale of the personal property of the deceased and the administrator's agreement with the bank to facilitate that sale was a mere incident to the sale.

However, it is claimed that as there were two administrators, one alone, could not bind the estate. There is no merit in this contention. As before stated, nothing detrimental to the estate could arise as a result of the agreement in question, and we think that it was of a kind that one administrator was authorized to make without consulting the other. [24 C. J. 1184.] We find the case of Armor v. Frey, 253 Mo. 447, cited by defendant not in point.

We think, however, that the decree of the court was erroneous in ordering that execution issue. [Sections 188 and 1629, R. S. 1919; Brown v. Woody, 64 Mo. 547; Brown v. Woody, 98 Mo. 259.] The judgment is reversed and the cause remanded with instructions to the trial court to enter judgment for plaintiff in the form of the present judgment with the exception that the wording of the judgment or decree shall omit ''and that execution issue therefor.'' *Arnold, J.,* concurs; *Trimble, P. J.,* absent.