STATE OF MISSOURI, at the Relation of PAUL W. PREISLER, Relator, v. WALTER H. TOBERMAN, Secretary of State of the State of Missouri, Respondent, No. 44409—269 S. W. (2d) 753.

Court en Banc, July 12, 1954.

*Paul W. Preisler* pro se.

*John M. Dalton,* Attorney General, and *John W. Inglish,* Assistant Attorney General, for respondent.

HYDE, J.—Mandamus to require the Secretary of State to accept relator's Declaration of Candidacy for Representative in Congress from the Second Congressional District on the Nonpartisan Ticket and to certify his name to the proper election officials to be printed on the ballot for the primary election of August 3, 1954.

Respondent admits that relator has filed the proper declaration papers, and paid the required fee, and would have been entitled to file as a nonpartisan candidate in the State primary election except

for the adoption of Senate Bill 117 by the 67th General Assembly, approved April 21, 1953. (Sec's. 120.140-120.230, all statutory references are to RSMo. and V.A.M.S.) Respondent says the provisions of 120.300-120.650 hereinafter referred to as the State Primary Act, and particularly Sec's. 120.360 and 120.450, authorizing candidates on a nonpartisan ticket, were repealed by implication by the adoption of Senate Bill 117, hereinafter referred to as ▇▇▇ the 1953 Act; and this is the decisive question for the determination of this case.

Sec. 120.300 provides: "except as otherwise provided by law, all candidates for elective offices shall be nominated by a primary election" (held as specified in the Act, originally Laws 1909, p. 481); certain city, town, village and school offices being excepted. Methods of nomination "otherwise provided by law" were certificates of nomination signed by a required number of voters (Sec's. 120.010-120.080) and by party committees under certain conditions (Sec's. 120.090, 120.550, 120.560, 120.750; see also new Sec. 120.550 adopted by the 67th General Assembly; and Sec. 120.840 as to presidential electors.) We have held that the State Primary Act "intended to allow completely free participation of minor political parties in all elections to which it applied"; and that "the only requirement that can be found in that act, as to participation of any political party in the primary held by the State, is that some qualified persons should file as candidates for the nomination of the party." (State ex rel. Gipe v. Nelson, 358 Mo. 164, 213 S. W. (2d) 905.) Of course, to be a political party there must be a party organization with a treasurer of its central committee (See Sec's. 120.350 and 120.750.) The State primary election was made open not only to any political party but also to "any person desiring to file declaration papers or propose as a candidate on any independent or nonpartisan ticket" (Sec. 120.-360); and provision was made for a nonpartisan ticket to include the names of all persons "who do not announce by such declaration papers as candidates of any political party." (Sec. 120.450.) Relator has followed this procedure and is entitled to the benefit of it unless the 1953 Act (Sec's. 120.140-120.230) has repealed these provisions; and our conclusion is that it has not done so.

▇▇▇ The 1953 Act contains no repealing clause or provision whatever. "Repeals by implication are not favored—in order for a later statute to operate as a repeal by implication of an earlier one, there must be such manifest and total repugnance that the two cannot stand; where two acts are seemingly repugnant, they must, if possible, be so construed that the latter may not operate as a repeal of the earlier one by implication; if they are not irreconcilably inconsistent, both must stand." (Riley v. Holland, 362 Mo. 682, 243 S. W. (2d) 79; State ex rel. George B. Peck Co. v. Brown, 340 Mo. 1189, 105 S. W. (2d) 909; State ex rel. Boyd v. Rutledge, 321 Mo. 1090, 13 S. W. (2d) 1061.)

It seems to us, and we so hold, that what is repealed by implication by the 1953 Act is the certificate of nomination method of making nominations provided by Sec's. 120.010 and 120.080. This cumbersome, restrictive system is replaced by the simpler methods provided by the 1953 Act which completely covers the subject matter of these former sections, by providing for nominations by petition both by new political parties and by individual voters who desire to support independent candidates. We have held that the methods provided by these older statutes could be used by a new political party to get its candidates on the ballot (State ex rel. Punch v. Kortjohn, 246 Mo. 34, 150 S. W. 1060); or by individual electors to nominate candidates who were not the nominees of any political party. (Atkeson v. Lay, 115, Mo. 538, 22 S. W. 481; State ex rel. Preiss v. Seibel, 295 Mo. 607, 246 S. W. 288.) The 1953 Act (Sec's. 120.140-120.230) covers both of these matters fully and completely. Sec's. 120.160 and 120.170 provide how a new political party can be organized and get its candidates on the general election ballot; and when it may be entitled to participate in State primary election thereafter, namely, if any of its candidates receive more than two percent of the total vote, state or district, in the general election. Sec. 120.180 provides for nominations of independent candidates by qualified voters. For either method (new party or independent candidates) signatures of a lesser percentage of the total vote are required for state-wide offices than under the certificate of nomination method and are computed on a different basis. Sec's.　　120.190, 120.200 and 120.210 provide requirements of form and contents of petitions. Sec. 120.220 fixes the time for filing petitions, which is after the date of the State primary election. Sec. 120.230 provides a method and time for withdrawal by a candidate nominated by petition. Sec. 120.140 contains definitions applicable to political parties only. The certificate of nomination method was a separate and supplementary method to the State primary election for nominating candidates to be voted on at the general election, in November, and, likewise, these certificates were to be filed after the State primary election. (See 120.060.) Clearly this new petition method replaces the certificate of nomination method for that purpose. Is it not also a separate and supplementary method for that purpose, so that either the State primary or the new petition method is available to persons desiring to become independent or nonpartisan candidates? We think it is and so hold.

Respondent concedes this would be true except for Sec. 120.150, which respondent says makes the new petition method exclusive at least for the nomination of any person as an independent or nonpartisan candidate. Section 120.150 provides: "Political parties as defined in Section 120.140 and individual voters to the number and in the manner specified in sections 120.140 to 120.230 may nominate candidates for public offices whose names shall be placed upon bal-

lots as provided by law, and in no other manner." As respondent concedes, this is certainly ambiguous language. As to parties it really says no more than that political parties "may nominate candidates for public offices." Since, as to political parties, the 1953 Act makes provisions only as to methods of making nominations by new political parties (included in the definition of "political party" in Sec. 120.140) perhaps it was intended to mean that new political parties "may nominate candidates for public offices", in the manner specified in Sections 120.140 to 120.230, "and in no other manner." It does say: "Individual voters to the number and in the manner specified in sections 120.140 to 120.230 may nominate candidates for public offices * * * and in no other manner." The only method heretofore provided for "individual voters" to nominate candidates for public office was the certificate of nomination method. Therefore, the reasonable construction of Sec. 120.150 seems to be that the former certificate of election method is no longer available to "individual voters" to nominate candidates for public office, and that the 1953 Act provides the only method by which they may do so. Since it covers the same subject matter and provides a similar but better method by which a sufficient group of "individual voters" may together nominate a candidate who has not filed for nomination in the State primary election, it is inconsistent with the certificate of nomination method and seems to be intended to replace it. However, we do not see how it has any bearing whatever on the provisions of the State primary election laws authorizing any individual citizen to file in the State primary to be voted on either for the nomination of an existing political party or as a nonpartisan candidate. The 1953 Act does not refer to the State primary election in any way except to state the conditions under which a new political party shall be entitled to take part in it.

Nominations in the State primary election are not, in any sense, nominations made by "individual voters." Instead they are nominations made by the certified results of a canvass of votes, cast in an election held by the State, by officers acting under authority of the State. The two methods of nomination are entirely different and are not inconsistent with or repugnant to each other. Under the State Primary Act, a person makes himself eligible to receive votes by filing his declaration 120 days prior to the time of the primary election (Sec. 120.320); and is nominated by obtaining more votes (of those who vote his ticket) than any other person filing for the same nomination on the same ticket. He must win the most votes in a contest if any other person seeks the same nomination on the same ticket; and all voters who desire to do so may vote on the specified day to determine the contest. Under the 1953 Act, there is no contest for a nomination nor any chance for one; there is only the signing of petitions by a required number of voters. Nominations by

this method are made not only after the lists for the primary election are closed but after it has been held because they are made when the petitions are filed. We have had both methods (the certificates of nomination being in effect nominating petitions of a more formal kind) ever since the State Primary Act was adopted. There is no reference in the 1953 Act to Sec's. 120.360 or 120.450 or to the methods they provide for participating in the State primary election; and there is nothing in the methods it provides for "individual voters" to nominate independent candidates by petition which are inconsistent with or repugnant to the methods provided by these sections of the State Primary Act, but instead they are supplementary to them just as were the provisions for certificates of nomination. These provisions of the 1953 Act certainly are inconsistent with and repugnant to the statutes providing for the certificate of nomination method (Sec's. 120.010-120.080) and we hold that the effect of the 1953 Act is to repeal them; but we also hold that Sec's. 120.360 and 120.450 and other related sections of the State Primary Act are not affected by it.

Both parties agree that, if relator is entitled to file in the primary, Sec. 120.430 makes it unnecessary to print a nonpartisan primary ballot, if there are no contests on the nonpartisan ticket for any office. We agree that this is within the intent and purpose of the statute, which was intended to prevent unnecessary expense of printing primary ballots for unopposed candidates on tickets which had not received five percent of the total vote cast for Governor in the last preceding election.

It is ordered that our peremptory writ issue to require respondent to accept relator's declaration of candidacy and receipt for the filing fee and at the proper time to certify his name to go on the general election ballot as nominated on the Nonpartisan Ticket for Representative in Congress from the Second Congressional District.

All concur except *Tipton, J.,* not sitting.